IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

**APANTAC, LLC,** an Oregon limited liability company,

Plaintiff,

v.

**AVITECH INTERNATIONAL CORPORATION,** a Washington corporation and **JYH CHERN GONG,** aka Morris Gong,

Defendants.

Civil No. 3:11-CV-1507-BR

**FINDINGS AND RECOMMENDATION ON THE PARTIES' MOTIONS TO COMPEL**

Four motions to compel discovery have been filed by the parties, which can be summarized as follows:

- Dkt. 128 – Plaintiff's motion to compel, filed October 22, 2013;
- Dkt. 129 – Defendants' motion to compel responses to RFP Nos. 7 and 11, filed October 25, 2013;
- Dkt. 139 – Defendants' motion to compel responses to RFP 8, 17, and 18, filed October 25, 2013; and
- Dkt. 144 – Defendants' motion to compel responses to RFP 6, filed October 25, 2013.

An oral hearing was held on November 26, 2013. Based on the parties' oral and written arguments, the following disposition of these motions is recommended: Plaintiff's MTC [Dkt 128] – Granted; Defendants' MTC [Dkt. 129] – Denied; Defendants' MTC [Dkt. 139] – Denied; Defendants' MTC [Dkt. 144] – Denied.

FINDINGS AND RECOMMENDATION ON MOTIONS TO COMPEL
Page 1

I.  **BACKGROUND PERTINENT TO THE MOTIONS TO COMPEL**

Plaintiff Apantac, LLC is based in Oregon and has a sister corporation Elite Image, Ltd. located in Taiwan. (Dkt. 81, ¶¶ 1-2.) Plaintiff agrees that for the purpose of discovery that Apantac and Elite can be treated as one-and-the-same. That is, a discovery request served on Apantac is sufficient to require production and responses from its sister company Elite. References herein to Apantac refers to both Apantac and Elite unless otherwise stated.

Defendant Avitech International Corporation is a Washington corporation with its principal place of business in Washington.[1] Avitech also has a sister corporation located in Taiwan, Silicon Video Systems ("SVS"). Avitech agrees that for the purpose of discovery that Avitech and SVS can be treated as one-and-the-same. That is, a discovery request served on Avitech is sufficient to require production and responses from its sister company SVS. References herein to Avitech refers to both Avitech and SVS unless otherwise stated.



Apantac and Avitech offer competing multiviewer products. A multiviewer is a device that allows multiple video images to be shown on a single display simultaneously in a split screen arrangement.

---

[1] Mr. Jyn Chern Gong, a/k/a Morris Gong, the owner of Avitech, is also a named Defendant, but that fact is not important for the purpose of these motions.

Apantac and Elite are owned by Mr. Thomas Tang. Mr. Tang was formerly employed by Avitech and left Avitech in April 2008 to start-up Apantac for the purpose of creating a competing multiviewer product. (Tang Decl. [Dkt. 15] ¶¶ 1-5.) Apantac's first prototype multiviewer was successfully shown at an industry show in Las Vegas during April 2009. (Tang Decl. [Dkt 161] ¶ 29.) Apantac and Avitech are current competitors in the multiviewer market.

In addition to other Apantac employees, five former SVS employees were hired by Apantac at various times: Adam Kao, C.K. Chou, Johnson Lee, Neo Xhu, and Rex Yen. (M. Gong Decl. [Dkt 130] ¶ 10.) SVS filed criminal complaints in Taiwan against each of these former SVS employees for copyright infringement. (M. Gong Decl. [Dkt 130] ¶ 17.) This and other alleged conduct by Avitech/SVS form the factual basis for Apantac's tort claims in this lawsuit.

Apantac asserts four causes of action in its suit against Defendants: (1) intentional interference with Apantac's prospective and existing employment relationships; (2) conversion of Apantac's property; (3) slander; and (4) intentional interference with existing and prospective business relationships. (Dkt. 81.) Avitech does not assert any counterclaims against Apantac. (Dkt. 83.)

## II.  LEGAL AUTHORITY

A party may obtain discovery on any non-privileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. *Id.*

The Court has inherent powers to limit even relevant discovery. Fed. R. Civ. P. 26(b)(2)(C). Even relevant discovery may be limited if it is unreasonably cumulative or

duplicative, if the party has had ample opportunity to obtain the discovery, or if the burden or expense outweighs the likely benefit. *Id.*

The Court has appointed me as Special Master to resolve all discovery issues in the matter. (Dkt. 125.)

### III. APANTAC'S MOTION TO COMPEL [DKT. 128]

#### A. Interrogatories 1 and 2

Apantac propounded two interrogatories[2] seeking to learn the identity of the person who provided Avitech with Apantac's firmware for its 2009 multiviewer.[3]

This particular firmware has a history in this case. It is the same firmware attached to various emails, that Apantac resisted producing; that became the subject of a previous motion to compel by Avitech (Dkt. 92); and that the Court ordered produced but with elaborate protection afforded to Apantac in its production (*see* Dkt. 116, 117). Indeed, the residual disputes over that motion to compel (*see* Dkt. 119), led the Court to appoint the undersigned as Special Master (Dkt. 120). In the Special Master's first status conference with the parties, the residual disputes (Dkt. 119) were mooted, in part by Avitech's disclosure that a third party had provided Avitech with a copy of that very same firmware. Having acquired Apantac's firmware from a third party, Avitech's engineers analyzed it. (M. Gong Decl. [Dkt. 130] ¶ 18.) Now Avitech is refusing to identify the third party who provided the firmware for Apantac's 2009 multiviewer to Avitech by standing on its objections to Apantac's interrogatories.

Avitech objects that the identity of its source for obtaining the 2009 multiviewer firmware is confidential. However, Avitech conceded at oral argument that the Court's

---

[2] Interrogatories 1 and 2 of Apantac's Second Set of Interrogatories to Avitech. (Dkt. 128 at 2.)
[3] The requests also ask for related information about how this firmware was provided, but the crux of the request and the focus of the objections are the identity of the person who provided the firmware. (Dkt. 128 at 2.)

protective order (Dkt. 69) already addresses the treatment of confidential information. Under the Court's Protective Order, Avitech's confidentiality objection presents no barrier to disclosure of the information.

Avitech asserted in its brief that "[i]t is not uncommon for courts to protect the identity of confidential informants" citing *United States v. One Parcel of Real Property*, 780 F. Supp. 715 (D. Or. 1991). But, *One Parcel* is inapposite—it involves the limited privilege afforded to the government for government informants. *One Parcel*, 780 F. Supp. at 719-20. *See also Roviaro v. United States*, 353 U.S. 53, 61 (1957) (involving "the Government's right to withhold the identity of an informer" in a criminal case). *See also* 6 James Moore et al., *Moore's Federal Practice* § 26.52(7) (3ed. 2013) (the government has a limited privilege to withhold the name of an informant and that belongs to the government). Avitech conceded at the hearing that it did not have this privilege. (Transcript of Oral Argument at 16.) It also conceded that Avitech would not suffer any competitive harm by disclosing the information sought in Interrogatories 1 and 2. (*Id*. at 15-16.)

Avitech's remaining assertion related to its confidentiality objection was that the Court has inherent powers to protect the source of the information so that the disclosure to Apantac would not unnecessarily harm that person.[4] But, Apantac's response is well-taken—there is no public policy in protecting someone who steals trade secrets and discloses them to a third party.

Avitech also objected on the grounds that the identity of its source for obtaining the 2009 multiviewer firmware was not relevant to any of Apantac's claims. But facts surrounding the circumstance that this undisclosed third party decided to give Apantac's proprietary information to Avitech during the course of a fierce lawsuit could be relevant to, or lead to admissible

---

[4] Avitech's arguments imply that the source of the firmware is someone working for Apantac with current access to Apantac's trade secrets and that upon learning of the identity of that person Apantac would take action against that person.

evidence in support of, Apantac's claim for tortious interference. For instance, the pressure created by the criminal lawsuits filed by SVS against Apantac's employees could have had an *in terrorem* effect that caused someone to reveal trade Apantac's trade secrets. Moreover, Avitech proffers no innocent reason for this disclosure. Apantac is entitled to answers to its Interrogatories Nos. 1 and 2 because those answers may provide evidence in support of its tort claims against Avitech. Avitech's objections are overruled. Apantac's motion is granted.

### B.   Confidentiality Level for Avitech's Comparison Report

Avitech has prepared a report comparing Apantac's firmware with Avitech's code (Bates Nos. Avitech – Tollaw – 001132 to 1147). It has been produced and designated as "Attorneys and Expert Eyes Only," under the Protective Order (Dkt. 69). The stipulated Protective Order (Dkt. 69) only provides one level of confidentiality designation—"Attorneys and Expert Eyes Only." Pursuant to the Protective Order, Mr. Tang is unable to review material designated as "Attorneys and Expert Eyes Only." Apantac requests an order that permits Mr. Tang to review this report.

At the oral hearing, Avitech agreed that if the Protective Order was supplemented to provide for designation of documents as "Confidential," then the report could be redesignated from "Attorneys and Expert Eyes Only" to "Confidential" allowing Mr. Tang access to the report. (Transcript of Oral Argument at 36-37.)

Apantac's motion is granted. The report at Bates Nos. Avitech – Tollaw – 001132 to 1147 is deemed to be designated as "Confidential" pursuant to the Supplemental Protective Order (Dkt. 165).

## IV. AVITECH'S MOTION TO COMPEL RESPONSES TO RFP 8, 17, & 18 [DKT. 139]

### A. RFP No. 8, 17, and 18

Avitech's document request No. 8 asks for a lengthy list of information about an apartment in Taiwan including copies of lease contracts, payments made by Apantac's employee for the apartment, photographs, parking passes, utility bills, Internet bills, phone bills, and evidence of the name of the landlord.

Apantac's response is that it does not have any such documents. And it stands to good reason that Apantac would not have such documents because it did not rent the apartment or pay the expenses—the testimony was that Rex Yen did. (Dkt. 157 pp. 1-2.) There is no relief that can be granted by the Court because Apantac possesses no such documents.

Avitech's document request No. 17 asks for copies of certified tax returns (from the Taiwanese government) for 2008, 2009, and 2010 for Adam Kao's wife, Rex Yen, Neo Xhu, Johnson Lee, and C.K. Chou.

Avitech's document request No. 18 asks for all bank account statements and investment statements for Adam Kao, Rex Yen, Neo Xhu, Johnson Lee, and C.K. Chou for 2008, 2009, and 2010.

An elementary principle limits document discovery to those documents that are in the responding party's "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Not a thread of a legal theory supports the notion that Apantac has control over its employees' private financial documents, much less the financial documents of a spouse of an employee. Avitech makes no attempt to show that Apantac has control over these documents. During the hearing the following exchange occurred.

> MR. JONCUS: Belinda Bjorn Reed works for you; right?
>
> MR. TOLLEFSEN: Yep.
>
> MR. JONCUS: Do you have a legal right to ask for her tax return?
>
> MR. TOLLEFSEN: I don't know. Don't know the answer to that. I've never tried.
>
> MR. JONCUS: I think the answer's pretty clear: You don't. Do you have the legal right to ask for her husband's tax returns? Because she's employed by you and --
>
> MR. TOLLEFSEN: Well, that I would agree. I don't know that I have any right do that.

(Transcript of Oral Argument at 90-91.) Shortly thereafter Avitech withdrew its motion to compel responses to document request nos. 8, 17, and 18.

It is outrageous that Avitech propounded document request Nos. 17 and 18 in the first place. Avitech's motion to compel documents in response to RFP Nos. 8, 17, and 18 is beyond the pale and a model of a frivolous motion.

## V. AVITECH'S MOTION TO COMPEL RESPONSES TO RFP 7 & 11 [DKT. 129]

### A. RFP 7

Avitech's document request demands that Apantac produce everything in its Elite Enterprise Resource Planning ("ERP") system for the period of January 1, 2008 through December 31, 2009. Apantac objects on the basis of: (1) relevance; (2) over breadth; and (3) unreasonable burden.

Avitech asserts that it is seeking this evidence to show that Adam Kao, Rex Yen, and C.K. Chou, and Johnson Lee started working for Apantac on an earlier date than claimed. (Dkt. 129 at 3.) It also contends that it needs this information to provide a clear picture of the timing of the development of Apantac's multiviewer and who paid for it. (Dkt. 129 at 9.)

Apantac responds that ERP does not contain any payroll information. Rather, it contains all of Apantac's manufacturing information, bills of materials for its products, and costs of its

materials. Apantac asserts that it has already produced the identification of the materials that go into its products even though this information is irrelevant to any issue in this case. Apantac further represents that it has already produced documentary evidence of when employees started at Apantac.

For several reasons, Apantac's objections are sustained and Avitech's motion is denied.

Avitech says that it wants to show when these employees began working for Apantac. Avitech has not explained how the starting date for these employees at Apantac is relevant to its defense. *See* Fed. R. Civ. P. 26(b)(1). Nor has Avitech explained how this discovery could lead to admissible evidence. The party seeking the discovery has the burden of demonstrating "a plausible chain of inferences showing how discovery of the item sought would lead to other admissible evidence." William W. Schwarzer et al., Rutter Group Practice Guide: Fed. Civ. Pro. Before Trial ¶ 11:615 (2013) (citing *Vardon Golf Co. v. BBMG Golf Ltd.*, 156 F.R.D. 641 (N.D. Ill. 1994).)

Apantac is accusing Avitech of tortious interference by filing baseless criminal copyright infringement actions. "Evidence is relevant if: (1) it has any tendency to make a fact more or less probable than it would be without the evidence; and (2) the fact is of consequence in determining the action." Fed. R. Evid. 401. Avitech's motion never mentions Apantac's causes of action or Avitech's defenses. Avitech never explains how any fact might have a consequence in determining the action, or how the evidence sought would make such a fact more or less probable. *See id.*

Avitech says its theory in support of its motions is that Mr. Tang could not have developed his multiviewer with the resources that he had. Therefore, Avitech asserts that it is

trying to discover whether Adam Kao, Rex Yen, Neo Xhu, Johnson Lee, and C.K. Chou violated their employment agreements with Avitech in order to help Mr. Tang.

The problem with this theory is that Avitech never explains how those facts are relevant to a defense to Apantac's tort claims in this litigation. Even if the former SVS employees violated their employment contracts, that does not constitute copyright infringement. Stated in another way, Avitech never explains how a violation of an employment contract by an ex-employee justifies the filing of a criminal copyright complaint. Avitech never demonstrates how the employee start dates are relevant to its defense or a plausible chain of inferences showing how discovery of the employee start dates would lead to other admissible evidence.

Even if it is assumed that the date that the employees began working for Apantac is relevant, the information sought is unlikely to contain such information. Indeed, Avitech acknowledges that the ERP does not contain payroll information. (Transcript of Oral Argument at 42.)

It is understood that Avitech theorizes that Apantac used code copied from Avitech's code. But, no such cause of action is asserted by Avitech in this case. Rather, what is at issue is Avitech's conduct in filing criminal copyright complaints against Avitech's former employees.

The information sought constitutes all of Plaintiff's manufacturing information including its Bill of Materials for its products and the cost of those materials. It's hard to imagine how this information is pertinent to Avitech's reasons for filing of criminal complaints against former employees. Avitech never mentions the criminal copyright allegations or its defenses to those allegation. It flings one accusation after another at Apantac, but never ties the information sought with a defense to tortious interference. If Avitech wants to compel discovery, it needs to tie the evidence sought with its defense. A litany of accusations does not do the trick. A litany

of accusations does not make Apantac a bad actor, and painting Apantac as a bad actor does not substitute for a concise explanation of relevance.

Avitech also argues that it needs to see the timeline of Apantac's development of the multiviewer and how it was paid for. Again, it does not explain how this information is relevant to any defense. Avitech also fails to demonstrate a plausible chain of inferences showing how this discovery would lead to relevant and admissible evidence related to a defense.

Avitech's request is overbroad as to time. Apantac launched its prototype in April 2009. Any alleged copying would have happened before then. Yet, the request for ERP data stretches to the end of 2009, which is indicative of a request that is not tailored to uncover admissible evidence.

Avitech's request is overbroad as to subject matter. ERP contains all of Apantac's engineering, material and cost information. At oral argument Avitech argued that the information would "show how the product was created, who the suppliers were." Avitech went on, "So we'll be able to . . . then see how the money was used." (Transcript of Oral Argument at 39.)

But Avitech has not explained the tie between "how the product was created" and "who the suppliers were" to any defense that it has. Avitech has not explained the tie between how Apantac used its money to any defense that Avitech has. Avitech brought criminal copyright infringement actions against its former employees. Copyright infringement requires copying. The evidence of whether or not Avitech's code was copied is present in the code itself. Avitech already has that code.

This discovery is also unreasonably cumulative. *See* Fed. R. Civ. P. 26(b)(2)(C). Apantac has already produced documentary records of when the employees began their

employment. Avitech has deposed the employees and Apantac's human resource manager. Apantac has already produced its material purchases for its multiviewer.

Avitech's filings undermine its prospects for success. What was called for was a concise statement of how the sought-after information would have a tendency to make a fact more or less probable, and how that fact is of consequence to its defense. *See* Fed. R. Evid. 401. Instead, Avitech filed a mountain of material that served to obfuscate, not elucidate, the pertinent argument.


Avitech's Motion to Compel Responses to RFP Nos. 7 and 11

Avitech's motion to compel RFP Nos. 7 and 11 included 9 declarations and 54 attachments to those declarations. The bulk of these materials and their content did not advance Avitech's position—they undermined it.

For instance, Mr. Morris Gong's nine page declaration offers lengthy opinion about Mr. Tang's capability to write software. (M. Gong Decl. [Dkt. 130].) Mr. Gong simply does not have personal knowledge about Mr. Tang's capability to write software. Nor is Mr. Gong

qualified as an expert to offer his opinion about Mr. Tang's capability to write software. Nor is Mr. Tang's ability to write software pertinent to Avitech's motion.

Belinda Born-Reid, a paralegal for Avitech's attorneys, offers a declaration that goes far beyond facts that she has personal knowledge of. (Born-Reid Decl. [Dkt. 137].) For example, she swears she has personal knowledge that C.K. Chou violated his non-compete agreement with Avitech. (*Id.* ¶ 10.) Clearly this is incompetent testimony—Ms. Born-Reid is proffering a legal conclusion as if it were a statement of fact, and stating it under oath as a matter of her own personal knowledge. Moreover, Avitech cites this incompetent evidence in its motion. (Dkt. 129 pp. 3-4.)

Avitech's willingness to make such flimsy arguments, on such faulty evidence, on points unrelated to the discovery dispute serve to undermine the legitimacy of Avitech's motion. If Avitech has valid arguments to overcome Apantac's objections, it would not need nine declarations and 54 attachments in a 3" binder. The materials submitted appear to be for the purpose of creating a diversion to cover up a lack of merit. This impression is reinforced by Avitech's motion to compel RFP Nos. 8, 17, & 18, which it dropped when its complete lack of merit was exposed.

Avitech's motion invites inquiry into its mantra that its former employees violated the non-competition clauses in their employment agreements. A review of a sample of that evidence does not favor Avitech. Mr. Morris Gong attaches a translation of the employment agreement with C.K. Chou to his declaration. Mr. Gong asserts that the agreement contains a "one year non-compete provision" without pointing to the specific provision in the agreement. (M. Gong Decl. [Dkt. 130] ¶ 10.) Mr. Gong apparently is referring to Chapter 2, ¶ 2(6) of the Employment Agreement which states in its entirety:

> (6) In the case that Party B [C.K. Chou] engages in the engineering technology work similar to what it did for Party A [SVS] within one year after its departure from Party A, it is not allowed to conduct the task in the filed having same technology with Party A's (including a variety of technologies that Party B learned or developed by other employees of Party A) or work on the proposals, patents, pictures, texts and methods related to the aforesaid work.

Putting aside the question of whether this clause is enforceable,[5] its terms would not seem to apply to Mr. Chou because he is a salesman (*see* Dkt. 156 p. 14) who would not have engaged in "engineering technology work."

### B.    RFP 11

Avitech's RFP No. 11 seeks "certified document copies of the 2008 and 2009 year-end report Elite filed with the Taiwan Government by Elite or Apantac stating names of employees and amount paid each employee during the calendar year."

The defects of Avitech's motion with respect to RFP No. 7 above remain in full force. Despite the volume of its filing Avitech has not addressed how this information would be relevant to any defense in this litigation.

Even if Avitech could make out a plausible chain of inferences showing how the discovery sought would lead to admissible evidence (which it has not done), this information is unreasonably cumulative or duplicative. Apantac has already produced documentary evidence of when each former SVS employee started to work for Apantac and Avitech deposed its former SVS employees on this very question.

Avitech says that it is interested in the date their ex-employees began their employment with Apantac/Elite. But a request for "the amount paid each employee during the calendar year" does not answer the question of when employment began.

---

[5] There are serious doubts whether such a restraint on Mr. Chou's employment is enforceable because SVS did not pay him during the period of the restraint. (*See* Yang Decl. [Dkt. 159] ¶ 7.)

Further, Avitech is demanding that Apantac obtain these documents from the Taiwanese government. It is Avitech's burden to show that these documents are within Apantac's control. *See U.S. v. International Union of Petroleum and Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989). Avitech has not attempted any such showing.

Avitech's motion to compel responses to requests for production Nos. 7 and 11 is denied.

## VI.   PLAINTIFF'S MOTION TO COMPEL RFP NO. 6 [DKT. 144]

Avitech's document request No. 6 asks for all documents evidencing Thomas Tang's activities from March 1, 2008 through December 31, 2009, including bank statements evidencing travel, travel itineraries, diary entries, calendars, airplane tickets, baggage claim tickets, expense reports, passport stamps, email between Thomas Tang and travel providers. Apparently, the impetus for this request is a statement by Thomas Tang that he currently travels 250,000 miles a year. (Tollefsen Decl. [Dkt. 149] ¶ 4.) Avitech theorizes that with that much travel, Mr. Tang could not have had time to develop his multiviewer.

Apantac objected that the request is irrelevant, overly broad, and unduly burdensome.

Apantac's objections are well taken. The very nature of the request and the laundry list of documents itemized in the request indicates that it was designed to cause burden. The exemplary list of documents even includes baggage claim tickets. At the oral hearing Avitech tried to make light of its itemization of baggage claim tickets:

> MR. TOLLEFSEN: Well, I don't know if he has any. I mean, the answer probably is there aren't any. But if you have any -- Some people keep stuff when they travel, like souvenirs. I personally throw it all out. So we're just trying to cover the waterfront: If there's something there that shows that he traveled -- it may exist, probably doesn't exist. It's not burdensome, because he either keeps them in a drawer somewhere or he doesn't.

(Transcript of Oral Argument at 103.) But, the request is not limited to the enumerated travel documents—it is a request for "all documents evidencing Mr. Thomas Tang's activities" for 20

months. The example of a baggage claim ticket is not an indicator of a low burden—it serves as an example of how trivial a document Avitech considers to be within the scope of its request—and therefore indicates the extraordinary breadth of this request. It is hard to imagine how one would go about collecting all such tangible records that evidences how one's time was spent for 20 months.

There are too many logical leaps in Avitech's theory to merit overruling Apantac's relevance objection. Avitech claims that Mr. Tang did not have enough time to build a multiviewer. Even a time-clock record of how Mr. Tang spent his 24 hours a day for 20 months would have questionable probative value on whether the combined talents of Mr. Tang, his employees, Altera Corporation (who provided canned software and reference designs), and other suppliers were sufficient to produce the Apantac multiviewer. And it can be assumed that whatever tangible records might evidence Mr. Tang's activities for 24 hours a day over 20 months, it does not amount to a time-clock record.

Such tangible records are likely to explain only small snippets of how Mr. Tang spent his time. It is a logical leap to assume that such small snippets of information could be added up to paint a picture of how Mr. Tang spent his time over 20 months and how much work product he could generate during that time.

It is a further logical leap that there is a way to add up the combined talent and work product of Mr. Tang, his employees, Altera Corporation, and other suppliers to ascertain whether all those combined resources could build the Apantac multiviewer.

It is even a further logical leap to deduce that the alleged copying of Avitech's code was necessary to bridge the alleged gap to make the Apantac multiviewer.

It is a further a logical leap to deduce a connection between Mr. Tang's activities and a justification for Avitech's multiple criminal copyright infringement suits against its ex-employees.

It is a further logical leap to deduce that Mr. Tang's activities are probative of any defense in view of the results of that Taiwanese litigation, involving multiple former Avitech employees and a multitude of appeals, many of which, if not all, are completed—without a single finding of liability. Avitech has not shown how the sought-after records are related to any defense.



Avitech's Motion to Compel Responses to RFP Nos. 6

Again, Avitech's voluminous filing and systematic misuse of declarations undermines its motion.

Avitech attaches a declaration of Shun Liang who purports to be an expert witness for Avitech. (Dkt. 146.) Apparently, Avitech has offered this declaration to show that Apantac has actually copied some of Avitech's code software. Apparently, Mr. Liang has some expertise in

computer science, but much of the testimony offered by Mr. Liang consists of argument that a lawyer would make and conclusory technical opinions. (Liang Decl. [Dkt. 146].) In short, Mr. Liang's declaration lacks the earmarks of credibility.

Ms. Born-Reid submits a declaration in which, for example, she swears that upon her own personal knowledge, that Apantac's objections are "fraught with inaccuracies and factual distortions." (Born-Reid Decl. [Dkt. 148] ¶ 4.) Declarations proffering this kind of incompetent evidence cloaks any merit that may exist.

Avitech includes with its motion, some of the documents that it filed in the various criminal actions in Taiwan, consisting of some 536 pages, much of it in Chinese. These documents do not have the persuasive effect that was apparently intended. They are indicative of a whitewash, not a meritorious argument.

At the hearing, Avitech began to suggest ways to narrow the request due to the questions and arguments of counsel. Under these circumstances, that would be inappropriate. Parties are expected to serve reasonable discovery requests on each other. When a dispute arises, parties are to meaningfully meet and confer. Avitech never offered to narrow its request. (Transcript of Oral Argument at 107.) Avitech's behavior of propounding overly broad requests, demanding production, moving to compel the entire breadth of its requests, and then suggesting how it might retreat to a narrower scope at oral argument, does not engender any sympathy. Motions to compel are not mudslinging exercises to see how much will stick to the wall. Attempting to selectively pick out small parts of Avitech's requests that could conceivably have merit at this juncture will merely validate Avitech's apparent strategy in filing these motions.

Avitech's motion to compel RFP No. 6 is denied.

## VII. SANCTIONS

The Court's order (Dkt. 125) delegated to the Special Master powers under Fed. R. Civ. P. 53(c) and 37. Both of these rules include the authority to sanction discovery abuses. And the Court's order specifically mentions the topic of sanctions.

I am inclined to conclude that Avitech's behavior in asserting its three motions to compel is sanctionable. Apantac has not only had to bear the expense of responding to Avitech's motions, it is obligated to share the expense of paying the Special Master to consider Avitech's motions and write this Findings and Recommendation on Avitech's motions.

But, I am also mindful that issuing a recommendation for sanctions might ignite another round of expensive motion practice that Apantac would prefer to avoid. Apantac made a cursory request for sanctions in its briefing, but it may prefer to focus its attention and resources on the merits of the case, and not a parallel battle over sanctions.

Therefore, I will leave it to Apantac to decide whether it wants to pursue a motion for sanctions at this time, at the close of the case, or not at all.

IT IS SO ORDERED

DATED this 3rd day of January 2014.

By:     s/Stephen J. Joncus
         **Stephen J. Joncus**, OSB #013072
         Email: stephen.joncus@klarquist.com
         KLARQUIST SPARKMAN, LLP
         121 S.W. Salmon Street, Suite 1600
         Portland, Oregon 97204
         Telephone: 503-595-5300
         Facsimile: 503-595-5301

         *SPECIAL MASTER*