IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| **APANTAC, LLC,** an Oregon limited liability company, | Civil No. 3:11-CV-1507-BR |
| Plaintiff, | |
| v. | **FINDINGS AND RECOMMENDATION ON APANTAC, LLC'S MOTION FOR SANCTIONS** |
| **AVITECH INTERNATIONAL CORPORATION,** a Washington corporation **and JYH CHERN GONG,** aka Morris Gong, | |
| Defendants. | |

Defendants Avitech International Corporation and Morris Gong ("Avitech") were ordered to answer two interrogatories propounded in the Seventh Set of Interrogatories served by Plaintiff Apantac, LLC ("Apantac"). (Dkt. 167 at 4-6; adopted Dkt. 177.) Apantac moves for sanctions under Fed. R. Civ. P. 37(b)(2) for Avitech's failure to respond to these two interrogatories. (Dkt. 179.)

At the center of this dispute are Apantac's proprietary firmware files for its 2009 multiviewer. (Dkt. 128 p. 3.)[1] The parties have spent considerable effort in battles over these files ("Apantac firmware"). (*See* Dkt. 167 at 4.)

When Apantac learned that Avitech had obtained copies of the Apantac firmware from a third-party source, it sought discovery on Avitech's source and details of how Avitech was able to obtain a copy. (*See* Dkt. 128 p. 3.) Interrogatory #1 sought information on how Avitech

---

[1] Exhibits A and B to Dkt. 128 are the two firmware files at issue.

obtained the Apantac firmware file in Exhibit A from a third party.  (*Id*. at p. 2.)  Interrogatory #2 sought information on how Avitech obtained the Apantac firmware file in Exhibit B from a third party.  (*Id*.)  Each of Apantac's two interrogatories had six subparts:  (1) the date and time Defendants obtained the code; (2) the form in which Defendants obtained the code; (3) the means by which the code was transferred to Defendants; (4) from whom Defendants obtained the code; (5) what Defendants were told about the code; and (6) what other information was provided to Defendants with regard to the code.  (*Id*.)

Avitech refused to answer these interrogatories.  (*See* Dkt. 167 pp. 4-6.)  Apantac moved to compel.  (Dkt. 128.)  Apantac's motion to compel was granted.  (Dkt. 167 p. 6; adopted Dkt. 177.)

After being ordered to answer these two interrogatories, Avitech responded by citing to three emails dated July 9, 2013, August 8, 2013 (8:57 pm), and August 8, 2013 (10:57 pm).  (*See* Dkt. 181 pp. 6-11.)  Each of these three emails were from George Gong to his brother Morris Gong (the "George Gong emails").  (*Id*.)  In response to the portion of each interrogatory asking from whom Defendants obtained the Apantac firmware, Avitech's answer stated:  "George Gong at SVS.  According to George Gong, he received the original documents from Mr. Zhou, 鄒軍 (Zou Jun)."[2]

George Gong is the General Manager of Silicon Video Systems ("SVS").  (Dkt. 208 ¶ 3.) SVS is the Taiwanese sister corporation to Defendant Avitech.  (*See* Dkt. 167 p. 2.)  Defendant Avitech is owned and managed by Defendant Morris Gong.  (Dkt. 207 ¶ 3.)  George Gong is not an individual defendant, whereas Morris Gong and Avitech are named defendants.  Avitech

---

[2] Mr. Zhou's name, properly spelled, is Mr. Zou.

FINDINGS AND RECOMMENDATION ON MOTION FOR SANCTIONS
Page 2

apparently reasoned[3] that describing the George Gong emails was an accurate response to an interrogatory that asked how Defendants obtained the code.

Avitech's answer to the interrogatories was not responsive for a number of reasons. SVS and Avitech are so closely related that counsel for Avitech had previously agreed that for the purposes of discovery, SVS and Avitech are effectively treated as one.

> Mr. Tollefsen: . . . . But for discovery purposes, we agree, as counsel has, that there's enough common control with family members that it would be under—a discovery request to SVS would be under, to some extent, the control of Avitech. So they're separate legal persons. We're not saying that they're not. But certainly for discovery purposes, we cannot raise that shielding, we don't believe.
> Mr. Joncus: And, well, so in this case, it's Avitech that's a party; right?
> Mr. Tollefsen: Right. But that's the U.S. company.
> Mr. Joncus: Right.
> Mr. Tollefsen: And SVS is the Taiwanese company.
> Mr. Joncus: Right. So you're saying that requests to Avitech are sufficient to reach SVS?
> Mr. Tollefsen: Right. We don't think that we can use that shield, because they're the same family members and there's common stock ownership.

(Dkt. 169 18:1-24) (Transcript of Special Master Oral Hearing, November 26, 2013).

Avitech knew that identifying the George Gong emails to Morris Gong (*i.e.*, SVS to Avitech) would not be responsive to interrogatories directed to communications from a third party to SVS/Avitech. For instance, Avitech's primary argument in opposition to Apantac's motion to compel was that disclosure of the identity of the source would lead to "a destruction of this person." (Dkt. 169 15:25-16:1.) Counsel certainly could not have had George Gong in mind when he made this statement.

In opposing Apantac's motion to compel, Avitech pointed to an undisclosed third person as the source for providing the Apantac firmware to Avitech. George Gong submitted a

---

[3] Avitech's opposition brief does not explain its rationale for its answers.

declaration acknowledging that he was the one who received the code from a "confidential source." (Dkt. 152 ¶ 3.) George Gong said that he received the code in an email in June 2013. (Dkt. 152 ¶ 4.) George Gong said that he received the code under the condition that the confidential source would remain anonymous. (Dkt. 152 ¶ 5.) Morris Gong also presented a declaration acknowledging that the interrogatories were directed to the communication from the person who provided the source code to SVS. (*See* Dkt. 153 ¶ 3.)

Accordingly, Avitech knew that Apantac's interrogatories were directed to communications from the undisclosed third person who provided the Apantac firmware to George Gong. Yet, Avitech pretended that Apantac's interrogatories were directed to the George Gong emails—from George Gong to his brother Morris Gong. Answering the interrogatories by describing the George Gong emails was not responsive.

Apparently, Avitech was cognizant of a problem with pretending that George Gong was the source that provided the Apantac firmware to Avitech. So it hedged. It added the nugget that George Gong obtained the Apantac firmware from a Mr. Zou. But, adding this nugget of information did not answer the interrogatories. The interrogatories were directed to the communications between an undisclosed person and George Gong, whereas Avitech answered it with respect to the communications between George Gong and Morris Gong.

In opposition to Apantac's motion, Avitech included printouts of two emails from Mr. Zou to George Gong dated June 20 and 21, 2013 (the "Zou emails"). (*See* Dkt. 208-1 and 208-2.) These emails were previously not produced by Avitech and were a surprise to Apantac. These emails further demonstrate Avitech's failure to answer the interrogatory. The Zou emails were sent by Mr. Zou to George Gong in June 2013. Avitech's interrogatory answers do not

describe the circumstances of the Zou emails.  Rather, Avitech's interrogatory answers purported to describe the George Gong emails dated July and August 2013.

Avitech's opposition castigates Apantac for failing to properly investigate.  But, the interrogatories to Avitech was part of Apantac's investigation.  Avitech withheld information, refused to budge in the meet and confer, then sprung previously undisclosed emails in its opposition.  The fault here lies with Avitech, not Apantac.

Avitech spends most of its opposition trying to paint Apantac as a bad actor in its contact with Mr. Zou.[4]  Avitech's accusations appear grossly exaggerated, but in any event, how Apantac treated Mr. Zou has nothing to do with Apantac's motion.  The question presented by Apantac's motion is whether Avitech's answer to the interrogatory was complete.  Avitech never addresses that question beyond making conclusory statements.  Avitech's devotion of so much effort to its *ad hominem* attack on Apantac speaks volumes about the merit in its position.  Avitech's tactic of responding to the motion by springing information on Apantac that it did not disclose in its interrogatory answers, and then attempting to paint Apantac as the bad actor, while ignoring the sufficiency of its interrogatory answers, is not persuasive, to say the least.

The emails attached to Avitech's opposition shed light on what may have happened, as Apantac appropriately acknowledges in its Reply.  (*See* Dkt. 213 p. 3.)  In the 2009 time frame, Mr. Zou was a dealer in the type of equipment made by Avitech and Apantac.  In 2010, Apantac apparently sent Mr. Zou a software update to assist Mr. Zou's customer with a problem.  (*See* Dkt. 208-2.)  For some unexplained reason, Mr. Zou forwarded that email to George Gong on June 21, 2013.  (*Id.*)  George Gong then forwarded it to Morris Gong on February 4, 2014.  The

---

[4] Avitech accuses Apantac of harassment, intimidation, creating fear of retribution, and putting Mr. Zou in fear of his and his family's safety.  Avitech goes so far as to submit a 10 minute audio recording in Mandarin Chinese between George Gong and Mr. Zou on February 12, 2014, and a translation.  The attempt at drama is not persuasive.

most recent email shows an attached file named FPGAFW02242010_CV_50Hz_in_60Hz_out.7z (the "FPGA zip file").[5]  (*Id*.)  It cannot be ascertained from the paper printouts whether the FPGA zip file was attached to the 2010 email, but Apantac acknowledges that it probably was.  (*Id*. at 3-4.)  Apantac hypothesizes that it could have erroneously included source code files when it created the FPGA zip file.  (*Id*. at 4.)  But, Apantac cannot test its hypothesis without access to the electronic copies of the June 20 and June 21, 2013 emails from Mr. Zou to George Gong.

Avitech was ordered to answer the interrogatories (Dkt. 167) and Avitech failed to respond completely and accurately.[6]  Avitech knew that it was not answering completely and accurately.  Avitech did not obey the Court's discovery order and sanctions are appropriate under Fed. R. Civ. P. 37 (b)(2)(A).

### Recommended Sanctions

Apantac moved for sanctions under Fed. R. Civ. P. 37(b)(2).  (Dkt. 179.)  Under that rule, the court my issue further just orders for a party's failure to obey an order compelling discovery.  Fed. R. Civ. P. 37(b)(2)(A) lists a number of severe sanctions that do not apply to the current situation.  Under the current circumstances, the "just" remedy involves:  (1) the disclosure of more information concerning Avitech's acquisition of the Apantac firmware; and (2) payment of Apantac's reasonable expenses and attorneys' fees caused by Avitech's failure to answer the two interrogatories.

---

[5] A file with the .7z extension is a compressed file generated by file archive software called 7-Zip (*see* www.7-zip.org).  A .7z file can contain multiple files and folders all compressed into the single .7z file.

[6] Further, the information first disclosed in Avitech's opposition to Apantac's motion still does not provide all of the information requested in the interrogatories.  For instance, the emails themselves do not explain what Mr. Zou told George Gong about the emails or the circumstances in 2013 that caused Mr. Zou to forward emails from 2010 to George Gong.

Disclosure of more information is appropriate under the circumstances because Avitech should not benefit from its abuse of the discovery process. Apantac also has a legitimate interest in tracking down how its firmware came into the hands of Avitech. Indeed, Apantac may, in the end, find out that the code became available through its own mistake. At the opposite extreme, Avitech may have some culpability. There may be other facts that are useful to Apantac in this case.[7] In any event, the scope of what Apantac should be permitted to discover now is broader than the interrogatory requests that it served on Avitech. Avitech's misbehavior should be discouraged, and compelling it to disgorge more details may have that effect.

Payment of Apantac's expenses and attorneys' fees is appropriate under the circumstances. The rule requires it.

> Instead of or in addition to the orders above, the court **must** order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C) (emphasis added). There are no circumstances that justify Avitech's failure to abide by the Court's order to answer Apantac's interrogatories. Accordingly, Avitech will be ordered to pay Apantac's reasonable attorneys' fees and expenses related to its motion for sanctions.

Avitech shall, within 10 days of adoption of these Findings and Recommendation:

1. Provide a complete and accurate amended answer to Apantac's Seventh Set of Interrogatories.

---

[7] As Apantac points out, the original emails from Apantac to Mr. Zou were in 2010. It is unlikely that Mr. Zou woke up one day in 2013 and decided to forward these emails to George Gong without any other communication. (*See* Dkt. 213 p. 3.) Avitech's failure to obey the Court's order in responding to these two interrogatories raises suspicions. On the other hand, the facts may be inconsequential.

FINDINGS AND RECOMMENDATION ON MOTION FOR SANCTIONS

2. Provide a complete and accurate statement on the following subjects, to the extent that they are not already covered by its interrogatory answer:

   a. the circumstances under which Mr. Zou agreed to forward email dated in 2010 to George Gong in 2013;

   b. the sequence of events which lead to Mr. Zou sending the Zou emails to George Gong.

   c. whether the attachments shown in Dkt. 208-1 and 208-2 came from Mr. Zou; and

   d. whether Mr. Zou received any consideration for providing the files, and the details of the consideration provided.

3. Produce to Apantac digital duplicates of the following email:

   a. the June 20, 2013 email from peterzou06@gmail.com to "george" (Dkt. 208-1);

   b. the June 21, 2013 email from peterzou06@gmail.com to "george" (Dkt. 208-2);

   c. the February 4, 2014 email from george@svs.com.tw to 'SVS Morris.RD' (Dkt. 208-2);

   d. the July 9, 2013 email from george@svs.com.tw to 'SVS Morris.RD' (Dkt. 207-1);

   e. the August 8, 2013 email from george@svs.com.tw to 'SVS Morris.RD' (Dkt. 207-2); and

   f. the August 8, 2013, 10:57 pm email from george@svs.com.tw to 'SVS Morris.RD' (Dkt. 207-3).

4.   Produce all communications related to the Zou emails between Avitech, SVS, Morris Gong and/or George Gong on the one hand, and Mr. Zou on the other hand. (Dkt. 208-1 and 208-2.) These would include any communications that would answer the question of why Mr. Zou would forward a 3-year-old email to George Morris and any consideration offered or provided to Mr. Zou in exchange. This could include any communications that related to the conditions of the deal, for example, that Mr. Zou's identity remain anonymous. This would include any communications relating to Apantac's motion to compel and Avitech's opposition. Production of these communications includes producing digital duplicates of any electronic files, including email.

5.   Produce all communications related to the acquisition of the Apantac firmware between Avitech, SVS, Morris Gong and/or George Gong on the one hand and any other person or entity from which Avitech, SVS, Morris Gong and/or George Gong sought copies of the Apantac firmware.

Within 30 days of adoption of these Findings and Recommendation, Apantac may submit its itemization of attorneys' fees and expenses related to its motion for sanctions that it requests be awarded, and the basis for the reasonableness of the amount. Apantac will also be awarded its share of the costs of the Special Master's consideration of its motion for sanctions. The amount of the award will be detailed in a subsequent order.

DATED this 5th day of June, 2014.

By:   s/Stephen J. Joncus
      **Stephen J. Joncus**, OSB #013072
      Email: stephen.joncus@klarquist.com
      KLARQUIST SPARKMAN, LLP
      121 S.W. Salmon Street, Suite 1600

FINDINGS AND RECOMMENDATION ON MOTION FOR SANCTIONS
Page 9

Portland, Oregon  97204
Telephone:  503-595-5300
Facsimile:  503-595-5301

*SPECIAL MASTER*