IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


**APANTAC, LLC,**                              3:11-CV-01507-BR

    **Plaintiff,**

                                                         OPINION AND ORDER

v.

**AVITECH INTERNATIONAL CORP.**
**and JYH CHERN GONG,**

    **Defendants.**


**JOHN M. BERMAN**
**DAMON J. PETTICORD**
7175 S.W. Beveland, Ste. 210
Tigard, OR 97223
(503) 670-1122
(503) 620-7461

    Attorneys for Plaintiff

**FRANK S. HOMSHER**
**JOHN M. GRAHAM**
**JOHN J. TOLLEFSEN**
Tollefsen Law PLC
2122 164th St. S.W. Ste. 300
Lynnwood, WA 98087-7812
(503) 224-4600

    Attorneys for Defendants


**BROWN, Judge.**

    This matter comes before the Court on Plaintiff Apantac

LLC's Motion (#188) for Partial Summary Judgment, the Motion

1 - OPINION AND ORDER

(#200) for Summary Judgment of Defendants Avitech International Corporation and Jyh Chern Gong (aka Morris Gong), and the Findings and Recommendation (F&R) (#244) of Special Master Stephen Joncus regarding Apantac's Motion (#179) for Sanctions.

    In its Order (#245) issued June 6, 2014, the Court set oral argument on June 12, 2014, regarding the parties' Motions for Summary Judgment and directed the parties also to be prepared to present any objections to the Special Master's F&R.  At oral argument the Court took the Motions for Summary Judgment under advisement and extended the deadline for objections to the Special Master's F&R to Noon, June 16, 2014, with responses due at Noon on June 18, 2014.  Defendants' filed Objections to the F&R on June 16, 2014, and Apantac filed its Response to Defendants' Objections on June 17, 2014, at which time the Court took the F&R under advisement.

    For the reasons that follow, the Court **DENIES** Apantac's Motion for Partial Summary Judgment, **GRANTS in part** Defendants' Motion for Summary Judgment as to Apantac's First and Fourth claims for Intentional Interference with Existing and Prospective Business Relationships, and **DISMISSES without prejudice** Apantac's Second Claim for Conversion **as premature.**  At oral argument Apantac confirmed it had withdrawn its Third Claim against Defendants for Slander, and, therefore, the Court **DISMISSES** Apantac's Third Claim.

The Court also **ADOPTS in part** the F&R of the Special Master and **SANCTIONS** Defendants to pay an **AWARD** of reasonable costs and attorneys' fees to Apantac in an amount to be determined at a later date.  The Court **DECLINES** to adopt the remainder of the F&R for the reasons stated herein.

After determining the amount of attorneys' fees and costs to award to Apantac on its Motion for Sanctions, the Court will **DISMISS** this matter in its entirety.

## BACKGROUND

### I. Overview

This case has been pending since December 31, 2011, and is only one of many legal proceedings in a contentious dispute between the parties lasting over five years that arises out of a prior employment relationship between Thomas Tang, the principal of Apantac, and Defendant Morris Gong, the principal of Defendant Avitech, and now continues as Apantac competes with Avitech and others in the marketplace.

The Court agrees with the parties' statement that Oregon state law applies to Apantac's First, Second, and Fourth Claims.

### II. Facts

The following facts are undisputed unless otherwise noted.

Thomas Tang is the owner of Apantac, an Oregon LLC.  Tang and his wife, Penny Tang, are the majority shareholders of Elite

3 - OPINION AND ORDER

Image, Ltd., a Taiwanese corporation. Apantac and Elite work together to design and to manufacture products, including multiviewer systems, sold by Apantac.

Avitech is a Washington corporation. Defendant Morris Gong is the principal of Avitech. Silicon Video Systems, Inc. (SVS) is a Taiwanese corporation. Avitech and SVS work together to design and to manufacture various products sold mostly by Avitech and are engaged in the designing, manufacturing, and selling of multiviewer systems worldwide.

Tang worked for Avitech beginning in January 2004, resigned in March 2008, and ended his employment with Avitech in April 2008.

In March 2008 Tang filed Articles of Incorporation for Apantac and approximately one year later Apantac and Elite began delivering Apantac's multiviewers to customers.

Adam Kao, Chen Kun Chou, Johnson Lee, and Chih Wen Yen were previously employed by SVS through approximately the middle of 2008 and subsequently became employees of Elite.

In 2009 SVS filed a number of criminal complaints in Taiwan against Kao, Chou, and Lee alleging they had committed crimes such as encroachment, breach of trust, and erasure of electric magnetic records. In each case the local Taiwanese prosecutor determined there was not any evidence of criminal activity. SVS appealed these determinations a number of times, and each time

4 - OPINION AND ORDER

the determination was upheld.

In 2009 SVS also filed a criminal complaint against Elite, Chou, Lee, Yen, Tang, and ChingAn Xhu for copyright infringement.[1] In connection with that case, SVS filed two separate petitions to seize property belonging to Elite, which the Taiwanese court granted on condition that SVS post a bond. In approximately July 2011 and October 2011 the Taiwan court seized property in Elite's possession, and SVS took possession of that property pursuant to the court's orders. That property is currently in SVS's possession. Apantac contends all of the property in Elite's possession that was seized pursuant to the Taiwanese court orders belonged to Apantac. At oral argument the parties represented to the Court that the case in Taiwan is presently being appealed by SVS.

In January 2010 Tang filed a lawsuit, *Tang v. Avitech*, No. 10-2-02492-1SEA, in the Superior Court of Washington, King County, against Defendants for breach of contract. The parties settled the lawsuit.

In July 2011 SVS filed a civil lawsuit against Elite, Tang, Kao, Chou, Yen, Lee, and Xhu for copyright infringement. In September 2012 a report prepared by Taiwan Electronic Test Center

---

[1] In 2009 SVS also filed a criminal report with the Ministry of Justice, Bureau of Investigation, against Elite, Tang, Kao, Chou, Yen, Lee, and Xhu for the same alleged copyright infringement.

5 - OPINION AND ORDER

(ETC) (a testing agency appointed by the Taiwanese Intellectual Property Court) concluded Apantac/Elite's "Director" software does not infringe on SVS's "Cosmos" or "Galaxy" software. The Taiwanese Intellectual Property Court, therefore, dismissed SVS's claims and held Elite and the individuals did not infringe any of SVS's copyrights.

**THE PARTIES' CROSS-MOTIONS (#188, #200)
FOR SUMMARY JUDGMENT**

**I.   Apantac's Claims**

After withdrawing its Third Claim, Apantac has three claims remaining:

> <u>First Claim</u>:  Intentional Interference with Existing Business Relationships (IIBR) - Apantac alleges Gong (as the principal of Avitech) and Avitech made false criminal complaints that interfered with the prospective and existing employment and business relationships with "Apantac/Elite's employees." In order to protect those relationships and mitigate damages, Apantac paid approximately $175,000 in legal fees defending Elite's employees against Defendants. Apantac also seeks $150,000 in punitive damages.
>
> <u>Second Claim</u>:  Conversion - Apantac alleges it is entitled to recover the market value of goods wrongfully converted and still retained by Avitech and Gong ($180,000) in the Taiwanese criminal copyright-infringement proceeding, plus interest.
>
> <u>Fourth Claim</u>: Injunctive Relief - Intentional Interference with Existing Business Relationships and Prospective Business Relationships.  Apantac seeks to permanently enjoin Defendants "from filing false [criminal and civil] complaints against those with whom Apantac has existing or prospective business relationships."

6 - OPINION AND ORDER

In its Motion (#188) for Partial Summary Judgment Apantac moves for summary judgment on its First and Second Claims.

In their Motion (#200) for Summary Judgment Defendants move for summary judgment on all of Apantac's Claims.

**II. Defendants are entitled to summary judgment on Apantac's First Claim for IIBR because, among other things, the relationship with which Defendants allegedly interfered is not the requisite type of relationship protected by this tort under Oregon law.**

As the Oregon Court of Appeals recently held, interference with economic relations requires the plaintiff to prove six elements:

>     (1)  the existence of a professional or business
>          relationship (which could include, *e.g.*, a
>          contract or a prospective economic advantage),
>     (2)  intentional interference with that relationship,
>     (3)  by a third party,
>     (4)  accomplished through improper means or for an
>          improper purpose,
>     (5)  a causal effect between the interference and
>          damage to the economic relationship, and
>     (6)  damages.

*Cron v. Zimmer*, 255 Or. App. 114, 125 (2013)(*quoting McGanty v. Staudenraus,* 321 Or. 532, 535 (1995)).

With respect to the first element, the court in *Cron* observed that "commercial and contractual relationships enjoy the protection of the tort." *Id.* (citing *Allen v. Hall,* 328 Or. 276, 281 (1999)). Here the allegations in Apantac's Amended Complaint and the evidentiary record on these Cross-Motions is particularly sparse as to any specific relationship between Apantac and the

7 - OPINION AND ORDER

employees of Elite, Apantac's Taiwanese "sister" company whose attorneys' fees were paid by Apantac "in order to protect those relationships and mitigate damages." Although the companies are related, it is undisputed that Apantac and Elite are separate and distinct companies. In fact, Apantac conceded at oral argument that it does not have any contractual relationship with Elite. Nevertheless, Apantac argues there is an implied principal-agent relationship between Apantac and Elite (and Elite's employees) with which Defendants allegedly interfered by and through SVS's legal actions in Taiwan. Apantac did not plead, however, nor does the record contain, any evidence of such an implied principal-agent relationship.

In any event, the Court notes the *Cron* court recognized a defendant can be liable for interference "even though the arrangement interfered with does not rise to the dignity of a contract." *Id.* (citing *Luisi v. Bank of Commerce,* 252 Or. 271, 275 (1969), in which the defendant bank allegedly interfered with the parties negotiating a prospective contract)). In addition, the *Cron* court found "the tort also may, by a reasonable and principled extension, be made applicable to some *noncommercial* relationships and prospects." *Id.* (emphasis in original)(citing *Allen,* 328 Or. at 281, in which the court held the tort applies to the intentional interference with a prospective inheritance because "an expectancy of inheritance is an interest that fits by

8 - OPINION AND ORDER

logical extension within the concept underlying the tort of intentional interference with prospective economic advantage.")).

In *Fox v. Country Mutual Insurance Company* the same Oregon court later rejected the applicability of the tort to the prospective economic advantage and relationships at issue in an uninsured-motorist (UM), wrongful-death action and concluded the UM insurer's misrepresentation concerning coverage limits of its policy could not support recovery on an intentional-interference claim. 169 Or. App. 54 (2000). The *Fox* court stated: "[T]he essential purpose of the tort is to protect the integrity of, and expectancies in, voluntarily-created economic relationships." *Id.* at 74. In particular, the court emphasized:

> Thus, while courts have expanded the tort to protect additional types of relationships, its purpose has been constant: To protect the integrity of voluntary economic relationships, both commercial and noncommercial, that would have very likely resulted in a pecuniary benefit to the plaintiff but for the defendant's interference. We further observe that the relationships protected by the tort are, by virtue of their "voluntariness," the products of the parties' free and voluntary actions as autonomous individuals. Thus, in the abstract, the tort serves the essential purpose of protecting the basic right of the individual to conduct his or her economic affairs autonomously, *viz.,* without interference.

*Id.* at 75.

As noted, Apantac first asserted at oral argument and without the benefit of any supportive allegations in its Amended Complaint or evidence in the record that Apantac and Elite (and,

9 - OPINION AND ORDER

by extension, Elite's employees) have some form of voluntary, principal-agent relationship for their mutual, commercial benefit.  The Court, however, has been unable to find any Oregon authority that would support the conclusion that Apantac's decision to pay the defense costs of Elite and its employees incurred in Taiwan demonstrates the kind of relationship that underlies the purpose of the IIBR tort.  Indeed, as the *Fox* court noted,

> [p]rotection of a prospective interest in the outcome of civil litigation does not comport with that essential purpose [of the IIBR tort].  A lawsuit is, by its nature, an involuntary relationship.

*Id.* at 75.  Although many of the legal claims brought by SVS against Elite's employees were criminal in nature, the Court concludes the same principle applies here.

Thus, the Court concludes Apantac has failed to allege in its pleadings and to establish for purposes of the parties' Cross-Motions that a genuine dispute of material fact exists as to the first element of the IIBR tort.  Accordingly, the Court also concludes Defendant is entitled to summary judgment as to Apantac's First Claim.  The Court, therefore, need not consider Defendants' numerous other arguments as to its Motion for Summary Judgment against Apantac's First Claim nor specifically address the Court's own concerns as expressed at oral argument regarding whether Apantac is the real party in interest as to this First Claim or whether Defendants are the proper parties to sue for the

10- OPINION AND ORDER

acts of SVS under Apantac's unpleaded conspiracy theory.

**III. Apantac's Second Claim for Conversion is premature.**

As noted, Apantac contends in its Second Claim for Conversion that Defendants converted certain property designed and assembled for Apantac's customers by causing the Taiwanese courts to order the property seized in Taiwan as part of the Taiwanese court matters against Elite.  The Court notes "conversion" under Oregon law is the wrongful and intentional "exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel."  *Davis v. F.W. Fin. Svc., Inc.*, 260 Or. App. 191, 208 (2013).

During oral argument the parties expressed divergent views as to various prudential issues concerning this conversion claim (including principles of abstention and comity)[2] and raised the same unresolved "proper-party defendant" issues that Avitech raised against Apantac's First Claim.

The parties agree, however, that the Taiwanese criminal

---

[2] *See Asvesta v. Petroutsas*, 580 F.3d 1000, 1010-11 (9th Cir. 2009)("The merits of [a foreign judgment] should not, in an action brought in this country upon the judgment, be tried afresh.").  *See also Supermicro Computer Inc. v. Digitechnic*, 145 F. Supp. 2d. 1147, 1149 (N.D. Cal. 2001)(the international abstention doctrine "allows a court to abstain from hearing an action if there is a first-filed foreign proceeding elsewhere.").

11- OPINION AND ORDER

matter remains pending on appeal.  This Court concludes the continued pendency of the Taiwanese court action by which Apantac's property allegedly was "wrongfully" converted presents a more basic obstacle to Apantac proceeding on its conversion claim even if these other issues might eventually be resolved in Apantac's favor.  Specifically, as long as the Taiwanese action remains pending, the legitimacy of the Taiwanese court's seizure of the property in Elite's possession is not final.  Thus, whether the seizure may have been a conversion under Oregon law is not properly before the Court at this time.

Accordingly, the Court concludes Apantac's conversion claim is premature at best, and, therefore, the Court dismisses Apantac's Second Claim without prejudice.

## IV. Apantac's Fourth Claim for Injunction fails as a matter of law.

In its Fourth Claim Apantac seeks an injunction to prevent Defendants from filing "false" claims that interfere with Apantac's business relationships.  Apantac's Fourth Claim is based on its contention that Defendants have improperly caused legal claims to be filed in Taiwan against Elite and its employees and that those claims have interfered with Apantac's business relationships with Elite and its employees.

Because the Court has dismissed Apantac's First Claim for IIBR in light of the fact that the pleaded relationship with which Defendants allegedly interfered is not the requisite type

12- OPINION AND ORDER

of relationship protected by the IIBR tort under Oregon law, the Court concludes Apantac's Fourth Claim (based on a fear of prospective interference of the same type) also fails as a matter of law.  Accordingly, the Court concludes Defendant is entitled to summary judgment as to Apantac's Fourth Claim.

## **SPECIAL MASTER'S FINDINGS AND RECOMMENDATION (#244)**

The Special Master issued his F&R (#244) on June 4, 2014, in which he recommended the Court to grant Apantac's Motion (#179) for Sanctions for Defendants' Failure to Comply with the Court's Order With Regard to Answering Apantac's Seventh Set of Interrogatories and to order Avitech (1) to disclose information concerning Avitech's acquisition of Apantac's firmware and (2) to pay Apantac's reasonable expenses and attorneys' fees caused by Avitech's failure to answer the interrogatories at issue.

On June 16, 2014, Defendants filed Objections to the Special Master's Findings and Recommendations.  The matter is now before this Court pursuant to Federal Rule of Civil Procedure 53(f).

**I. Standards**

The district court has discretion to appoint a special master and to decide the extent of his duties.  *See Jaros v. E.I. Dupont (In re Hanford Nuclear Reservation Litig.)*, 292 F.3d 1124, 1138 (9th Cir. 2002).  Pursuant to Federal Rule of Civil Procedure 53(f), the special master must report to the court as

13- OPINION AND ORDER

required by the appointing order.  Parties may file objections to or motions to adopt or to modify the master's order, report, or recommendations no later than 21 days after a copy is served.  Fed. R. Civ. P. 53(f).  The court reviews *de novo* all objections to the special master's findings and recommendations of facts and conclusions of law.  *Id.*

**II. Discussion**

    **A.  The Special Master's F&R and Defendants' Objections**

As noted by the Special Master, the Court ordered Defendants to answer Interrogatory #1 and Interrogatory #2 from Apantac's Seventh Set of Interrogatories.  Order (#177).  The Special Master found Defendants knowingly failed to respond completely and accurately to the Interrogatories on the grounds that:

    1.    Defendants knew identifying the George Gong emails to Morris Gong would not be responsive to interrogatories directed to communications from an undisclosed third party to SVS/Defendants.

    2.    In Defendants' response to Apantac's Motion for Sanctions Defendants included two emails from a Mr. Zou to George Gong that were not previously produced by Defendants and were a surprise to Apantac.

    3.    Defendants' argument that Apantac failed to investigate lacks merit because the interrogatories were part of Apantac's investigation and, in any event, Defendants withheld information, refused to cooperate in the meet and confer, and then "sprung" the previously undisclosed emails on Apantac in its opposition.

In their Objections Defendants assert:

    1.    Apantac only sought the name of the undisclosed

14- OPINION AND ORDER

>          source of the firmware code in Interrogatories #1
>          and #2.
>
>    2.    The Special Master improperly considered issues
>          and arguments raised for the first time in
>          Apantac's Reply Brief.
>
>    3.    The Special Master expanded the scope of the
>          Interrogatories to require Defendants to produce
>          additional documents.

   **B.   Analysis**

   The Court has carefully considered Defendants' Objections to the Special Master's F&R and has reviewed *de novo* the pertinent portions of the record.  The Court does not find any error in the Special Master's ultimate conclusion that Defendants' responses to Apantac's Seventh Set of Interrogatories were purposefully incomplete and inaccurate.

   Accordingly, the Court **ADOPTS in part** the Special Master's recommendation that the Court sanction Defendants by requiring them to pay to Apantac the expenses and additional attorneys' fees that Apantac incurred in pursuing discovery as a result of Defendants' discovery abuses.  The amount of the award shall be determined by a properly-supported motion for such fees and costs, and Defendants shall have an opportunity to respond in due course.

   Because the Court is dismissing this matter, however, the Court need not consider further the Special Master's recommendation that the Court order additional discovery, and, accordingly, the Court does not adopt that portion of the Special

15- OPINION AND ORDER

Master's F&R.

## CONCLUSION

For these reasons, the Court **DENIES** Apantac's Motion for Partial Summary Judgment, **GRANTS in part** Defendants' Motion for Summary Judgment as to Apantac's First and Fourth Claims for Intentional Interference with Existing and Prospective Business Relationships, and **DISMISSES without prejudice** Apantac's Second Claim for Conversion **as premature.** The Court also **DISMISSES** Apantac's Third Claim for Slander that Apantac voluntarily withdrew.

The Court also **ADOPTS in part** the Findings and Recommendation (F&R) of the Special Master and **SANCTIONS** Defendants to pay an **AWARD** of reasonable attorneys' fees and costs to Apantac in amount to be determined at a later date. The Court **DECLINES** to adopt the remainder of the Special Master's F&R in which he recommends this Court permit further discovery.

After determining the amount of attorneys' fees and costs to award to Apantac on its Motion for Sanctions, the Court will **DISMISS** this matter in its entirety.

Unless the parties otherwise settle their differences, the Court directs Apantac to file no later than **July 8, 2014,** a motion for its attorneys' fees and costs incurred in pursuing discovery as a result of Defendants' discovery abuses together with all necessary supporting materials (see Local Rule 54-3).

16- OPINION AND ORDER

Defendants' response to such Motion (if any) is due **July 22, 2014**.  No reply will be permitted, and the Court will take the issue under advisement on July 22, 2014, without oral argument.

IT IS SO ORDERED.

DATED this 23rd day of June, 2014.

/s/ Anna J. Brown

ANNA J. BROWN
United States District Judge

17- OPINION AND ORDER